UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SOUTHBRIDGE RE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:21-cv-30061-KAR |
| | ) | |
| KIAVI FUNDING INC. & CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT AS TRUSTEE FOR VICTORIA CAPITAL TRUST, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER ON PLAINTIFF'S CROSS MOTION FOR
SUMMARY JUDGMENT & DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
(Dkt. Nos. 28 & 32)

ROBERTSON, U.S.M.J.

This case arises out of foreclosure proceedings on two commercial properties purchased

by Southbridge RE, LLC (Plaintiff) in 2018.  Plaintiff obtained loans from Defendant

LendingHome Funding Corporation (LendingHome) now known as Kiavi Funding (Kiavi), to

purchase the real estate at 103 Prospect Street in Springfield (Springfield Property) and 25

Pleasant Street in Westfield (Westfield Property).[1]  The loans were secured by mortgages on the

properties in favor of LendingHome.  Plaintiff contends that LendingHome's assignments of the

mortgages to Defendant Christiana Trust, a division of Wilmington Savings Fund, FSB, not in its

individual capacity but as trustee for Victoria Capital Trust (Christiana Trust), which foreclosed

---

[1] LendingHome Funding Corporation generally will be referred to as LendingHome because it
had not changed its name to Kiavi Funding when the events giving rise to this case occurred
(Dkt. No. 35-1 at 1-3).

1

on the properties, were not valid because LendingHome had previously assigned the mortgages to Toorak Capital Partners (Toorak).  Before the court are the parties' cross-motions for summary judgment (Dkt. Nos. 28 & 32).  The parties have consented to this court's jurisdiction (Dkt. No. 11).  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  For the reasons set forth below, the court denies Plaintiff's cross-motion for summary judgment and grants in part and denies in part Defendants' summary judgment motion.

I.    BACKGROUND[2]

A.    103 Prospect Street, Springfield, Massachusetts

Plaintiff acquired the deed to the Springfield Property on September 7, 2018 (PSOF ¶ 10; Def. Resp. ¶ 10).  On September 5, 2018, Plaintiff executed a promissory note in the amount of $155,700 to LendingHome for the purchase of the Springfield Property (Springfield Note) (DASOF ¶ 2; Pl. Resp. ¶ 2).  Plaintiff secured the note by granting LendingHome a commercial mortgage on the Springfield property (Springfield Mortgage) (DASOF ¶ 3; Pl. Resp. ¶ 3).  On September 14, 2018, the Springfield Mortgage was recorded in the Hampden County Registry of Deeds in book 22357, at page 427 (PSOF ¶ 11; Def. Resp. ¶ 11; DASOF ¶ 3; Pl. Resp. ¶ 3).

On September 19, 2018, a LendingHome closing team leader appeared before a notary public and executed an Assignment of Deed of Trust on the Springfield Property in blank, meaning that the document did not identify an assignee, as security for a private funding

---

[2] Unless another source is cited, the facts are drawn from Plaintiff's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment (PSOF) (Dkt. No. 31); Defendant's Response to Plaintiff's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment (Def. Resp.) (Dkt. No. 43); Defendants' Amended Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment (DASOF) (Dkt. No. 45); and Plaintiff's Statement of Disputed Facts in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment (Pl. Resp.) (Dkt. No. 37).

agreement between LendingHome and Toorak (DASOF ¶ 52; Pl. Resp. ¶ 52; Dkt. No. 35-5 at 32).

Plaintiff defaulted under the terms of the Springfield Mortgage by failing to make the September 1, 2019 payment and all subsequent payments (DASOF ¶ 4; Pl. Resp. ¶ 4).

On December 13, 2019, LendingHome executed an assignment of the Springfield Mortgage to Christiana Trust (DASOF ¶ 6; Dkt. No. 35-1 at 51-52). The assignment was recorded in the Hampden County Registry of Deeds on December 13, 2019 in book 22999, at page 307 (Dkt. No. 35-1 at 51-52).

Although Plaintiff disputes that Christiana Trust held the Springfield Note and the Springfield Mortgage on that date, on October 14, 2020, James Missell, a LendingHome portfolio manager, representing LendingHome as the servicer of the Springfield Mortgage, executed a Certification Pursuant to Massachusetts 209 CMR § 18.21A(2)(c)[3] and an Affidavit Regarding Note Secured by a Mortgage to be Foreclosed stating that LendingHome assigned the mortgage to Christiana Trust and that Christiana Trust held the Springfield Note (DASOF ¶¶ 9, 10; Pl. Resp. ¶¶ 9, 10, 20, 21; Dkt. No. 35-1 at 53-56).

On November 2, 2020, LendingHome caused Plaintiff to be served with a Notice of Default and Election to Sell Property pursuant to paragraph 4.3(a) of the Springfield Mortgage

---

[3] The pertinent clause of the regulation, 209 C.M.R. § 18.21A(2)(c), provided:

> A third party loan servicer shall certify in writing the basis for asserting that the foreclosing party has the right to foreclose, including but not limited to, certification of the chain of title and ownership of the note and mortgage from the date of the recording of the mortgage being foreclosed upon. The third party loan servicer shall provide such certification to the borrower with the notice of foreclosure, provided pursuant to [Mass. Gen. Laws ch.] 244, § 14 and shall also include a copy of the note with all required endorsements.

(DASOF ¶ 11).  Section 5 of the promissory note contained a waiver of notices of default (Dkt. No. 35-1 at 8).  Section 7 of the Springfield Note indicated the means by which notices should be delivered to Plaintiff at 47 Harvard Street, Worcester, Massachusetts (Dkt. No. 35-1 at 8). Section 6.31.3(c) of the Springfield Mortgage, the provision that was specific to Massachusetts, stated that section 4.3(a) of the mortgage, entitled "Declaration and Notice of Default," was deleted in its entirety and replaced with the following:  "Lender shall have the right to cause the Property to be sold under the power of sale contained in this Mortgage in any manner permitted by applicable law" (Dkt. No. 35-1 at 49).  The Notice of Default and Election to Sell Property was sent by certified mail, return receipt requested, to Plaintiff, c/o Hunter Foote[4] at 103 Prospect Street, Springfield, MA; 14 Main Street, Wales, MA; 25 Pleasant Street, Westfield, MA; 47 Harvard Street, Suite 200, Worcester, MA;[5,6] and 9 Central Street, Southbridge, MA. The notice was also sent to Plaintiff, c/o Hunter Foote, 119 Forest Street, Worcester, MA (Dkt. No. 35-1 at 57-80). [7]

---

[4] Foote was listed as the manager and registered agent of Plaintiff on the Certificate of Organization that was filed with the Massachusetts Secretary of the Commonwealth on March 12, 2014 (Dkt. No. 35-3 at 1-3).  The certificate showed Plaintiff's address as 9 Central Street, Southbridge, MA (Dkt. No. 35-3 at 1-2).

[5] The address on the cover letter read "47 Harvard Street, Suite 220, Worcester, MA" (Dkt. No. 35-1 at 73).

[6] On August 2, 2017, Plaintiff filed a Statement of Change of Resident Office Address with the Massachusetts Secretary of the Commonwealth.  The statement identified Hunter T. Foote as Plaintiff's resident agent with an office address of 47 Harvard Street, Suite 220, Worcester, MA 01609 (DASOF ¶ 1; Pl. Resp. ¶ 1).

[7] The cover letter was addressed to Southbridge RE, LLC's resident agent and address that was on record with the Secretary of the Commonwealth as of March 20, 2020: "Plaintiff, c/o Marcanthony Salce, 119 Forest Street, Worcester, MA" (Dkt. No. 35-1 at 61; Dkt. No. 35-5 at 60-62).

When Plaintiff failed to cure its default by November 9, 2020, the date stated in the notice, Christiana Trust scheduled a foreclosure sale of the Springfield Property on December 17, 2020 (DASOF ¶ 12; Pl. Resp. ¶ 12).  Christiana Trust published a Notice of Mortgagee's Sale of Real Estate (Notice of Sale) in the Springfield Republican for three consecutive weeks on November 17, November 24, and December 1, 2020.  The notice indicated that LendingHome had assigned the mortgage to Christiana Trust on December 13, 2019 (Dkt. No. 35-1 at 81; Dkt. No. 35-5 at 48-49 ¶ 7).

On November 23, 2020, Christiana Trust mailed Plaintiff a Notice of Intention to Foreclose Mortgage and Intent to Pursue Deficiency after Foreclosure along with the Notice of Sale and Certification Pursuant to Massachusetts 209 C.M.R. § 18.21A(2)(c) (DASOF ¶ 14; Pl. Resp. ¶ 14).  On that date, Defendants' attorney executed an affidavit certifying that the Notice of Intention to Foreclose Mortgage and Intent to Pursue Deficiency were mailed to Plaintiff and others, postage prepaid, by registered mail with return receipt requested within twenty-one days of the sale (DASOF ¶ 15; Pl. Resp. ¶ 15).

Meanwhile, at some point not disclosed in the record, Toorak filled in its name and address as the assignee on the September 19, 2018 assignment in blank, and added the number assigned to the Springfield Mortgage by the Hampden County Registry of deeds, the book and page numbers of the recorded mortgage, and the recording date (Dkt. No. 35-5 at 31-32 and at 55 ¶ 10).  The assignment to Toorak was recorded in the Hampden County Registry of Deeds on November 30, 2020 in book 23560, at page 35 (PSOF ¶ 12; Def. Resp. ¶ 12; DASOF ¶ 56; Pl. Resp. ¶ 56; Dkt. No. 35-5 at 31-32).

On December 11, 2020, Plaintiff caused a Notice of Lease on the Springfield property to be recorded in the Hampden County Registry of Deeds in book 23584, at page 439 (DASOF ¶

16; Pl. Resp. ¶ 16).  The notice stated that Plaintiff entered into a six-year lease with Cia

Recovery Services, LLC, on December 1, 2020.  Cia Recovery Services, LLC, was owned and

operated by Michelle Ngila, who was involved in a relationship with Foote, the former manager

and registered agent for Plaintiff who executed the Springfield Note and Mortgage (DASOF ¶¶

17, 18; Pl. Resp. ¶¶ 17, 18; Dkt. No. 35-2 at 95).

On June 1, 2021, representatives of LendingHome, Toorak, and Christiana Trust

The foreclosure sale of the Springfield Property was postponed by public proclamation

from December 17, 2020 to January 21, 2021 after Foote made a down payment on an approved

short sale of the property (Dkt. No. 39 at 1-2 ¶¶ 3, 4).  On January 21, Ngila entered the highest

bid of $141,000.  Because Ngila failed to close within the time provided by the Memorandum of

Sale Contract, Christiana Trust terminated the purchase and sale contract and offered the

Springfield Property to Ruby Realty, the second highest bidder at the foreclosure sale.  Ruby

Realty contracted to purchase the Springfield property for $140,900 but has not closed on the

sale due to the title dispute.  Plaintiff owes a total of $266,811.10 under the terms of the

Springfield Mortgage (DASOF ¶¶ 19, 20, 22-25; Pl. Resp. ¶¶ 19, 20, 22-25).

On June 1, 2021, representatives of LendingHome, Toorak, and Christiana Trust

executed an affidavit under Mass. Gen. Laws ch. 183, § 5B (5B Affidavit) explaining the reasons

why the mortgage assignment in which Toorak appeared as the assignee was invalid and stating

that the affiants elected to void this assignment (Dkt. No. 30-9).  This affidavit was recorded in

the Hampden County Registry of Deeds in book 23943, at page 530 (PSOF ¶ 14; Def. Resp. ¶

14; Dkt. No. 35-5 at 19-24).

     B.     25 Pleasant Street, Westfield, Massachusetts

Plaintiff purchased the Westfield Property on October 4, 2018 (PSOF ¶ 1; Def. Resp. ¶

1).  On October 11, 2018, Plaintiff executed a promissory note to LendingHome in the amount of

$175,000 to finance the purchase of the Westfield Property (Westfield note) (DASOF ¶ 26; Pl. Resp. ¶ 26).  Plaintiff secured the note by granting LendingHome a commercial mortgage on the Westfield Property in the amount of $175,000 (Westfield Mortgage) (DASOF ¶ 27; Pl. Resp. ¶ 27).  On October 11, 2018, the Westfield Mortgage was recorded in the Hampden County Registry of Deeds in book 22401, at page 130 (DASOF ¶ 27; Pl. Resp. ¶ 27).

On October 16, 2018, a LendingHome representative executed an assignment of the Westfield Mortgage before a notary public.  Like LendingHome's September 19, 2018 assignment of the Springfield Mortgage, the assignment of the Westfield Mortgage was in blank, meaning that, again, no assignee was identified in the document at the time of execution.  This assignment also allegedly provided security for LendingHome's private funding agreement with Toorak.

Plaintiff defaulted under the terms of the Westfield Mortgage due to its failure to make the September 1, 2019 payment and all subsequent payments (DASOF ¶ 28; Pl. Resp. ¶ 28).

LendingHome executed an assignment of the Westfield Mortgage to Christiana Trust on December 16, 2019.  On January 6, 2020, the assignment was recorded in the Hampden County Registry of Deeds in book 23033, at page 26 (DASOF ¶ 30; Pl. Resp. ¶ 30; Dkt. No. 35-3 at 53-55).  On February 4, 2020, a LendingHome foreclosure manager executed an Affidavit Regarding Note Secured by a Mortgage to be Foreclosed and certified that Christiana Trust held the Westfield note and that the requirements of Mass. Gen. Laws ch. 244, § 35B did not apply to the Westfield mortgage that secured the note.  The affidavit was recorded on February 11, 2020 (DASOF ¶ 32; Pl. Resp. ¶ 32; Dkt. No. 35-3 at 56-69).  On October 7, 2020, Missell, a portfolio manager for LendingHome, the mortgage servicer, executed a second Affidavit Regarding Note Secured by a Mortgage to be Foreclosed.  Based upon Missell's review of LendingHome's

correspondence file, notes of conversations of Plaintiff and its representatives, and loan history, he certified that Mass. Gen. Laws ch. 244, § 35B did not apply to the Westfield Mortgage.  The affidavit was recorded in the Hampden County Registry of Deeds on October 22, 2020 (Dkt. No. 35-4 at 1-3).  Missell also executed a certification Pursuant to Massachusetts 209 C.M.R. § 18.21A(2)(c) indicating that Christiana Trust owned the Westfield Note and Mortgage (DASOF ¶ 33; Pl. Resp. ¶ 33; Dkt. No. 35-3 at 70).

On October 15, 2020, Lending Home served Plaintiff with a Notice of Default and Election to Sell Property (DASOF ¶ 34; Pl. Resp. ¶ 34).  The notices were mailed to Plaintiff, c/o Foote at 25 Pleasant Street, Westfield, MA; 9 Central Street, Southbridge, MA; 47 Harvard Street, Suite 220, Worcester, MA; and 14 Main Street, Wales, MA.  The notice was also mailed to Plaintiff, c/o Marcanthony Salce, 119 Forest Street, Worcester, MA (Dkt. No. 35-3 at 71-90).

Plaintiff failed to cure its default prior to the date stated in the Notice of Default. Christiana Trust then scheduled a foreclosure sale of the Westfield Property on December 17, 2020 (DASOF ¶ 36; Pl. Resp. ¶ 36).  Christiana Trust caused a Notice of Mortgagee's Sale of Real Estate (Notice of Sale) to be published in the Westfield News for three consecutive weeks on November 18, November 25, and December 2, 2020 (PSOF ¶ 8; Def. Resp. ¶ 8).  The Notice of Sale indicated that the Westfield Mortgage had been assigned to Christiana Trust (Dkt. No. 35-4 at 4).

On November 20, 2020, Christiana Trust caused a Notice of Intention to Foreclose and Intention to Pursue Deficiency After Foreclosure, along with copies of the Notice of Sale and Noteholder Certification to be mailed to Plaintiff (DASOF ¶ 38; Pl. Resp. ¶ 38).  On November 20 and 23, 2020, Defendants' attorneys certified that they had complied with Mass. Gen. Laws ch. 244, § 17B by mailing to Plaintiff and other parties, including the Internal Revenue Service,

the Notice of Intention to Foreclose Mortgage and Intent to Pursue Deficiency within twenty-one days of the scheduled sale (DASOF ¶¶ 39, 40; Pl. Resp. ¶¶ 39, 40).

Again, at some point not disclosed in the record, Toorak filled in its name and address as the assignee on the October 16, 2018 assignment in blank, and added the number assigned to the Westfield Mortgage by the Hampden County Registry of deeds, the book and page numbers of the recorded mortgage, and the recording date.  The assignment to Toorak was recorded in the Hampden County Registry of Deeds on November 30, 2020 in book 23560, at page 8 (PSOF ¶ 4; Def. Resp. ¶ 4; Dkt. No. 35-5 at 33-34; Dkt. No. 35-5 at 55 ¶ 10).

On December 11, 2020, Plaintiff caused a Notice of Lease of the Westfield property to Cia Recovery Services to be recorded in the Hampden County Registry of Deeds.  The notice was substantially similar to the notice of lease that was recorded for the Springfield Property (DASOF ¶¶ 41-43; Pl. Resp. ¶¶ 41-43).

The foreclosure sale of the Westfield Property was postponed by public proclamation from December 17 to December 22, 2020 due to a December 17, 2020 snowstorm (DASOF ¶ 44; Pl. Resp. ¶ 44; PSOF ¶ 6; Def. Resp. ¶ 6; Dkt. No. 39 at 2 ¶ 6).  Christiana Trust entered the highest bid at the foreclosure sale and the foreclosure deed conveying title to Christiana Trust was recorded in the Hampden Count Registry of Deeds in book 23780, at page 467 on March 23, 2021 (DASOF ¶¶ 45, 46; Pl. Resp. ¶¶ 45, 46).  Missell's February 3, 2021 affidavit, purportedly showing Defendants' compliance with Mass. Gen. Laws ch. 244, § 14, was also recorded with the Westfield foreclosure deed.  However, Missell's affidavit contained the Notice of Sale dates, news publication (Springfield Republican), foreclosure sale date (January 21, 2021), purchaser (Ngila), and purchase price for the Springfield property (PSOF ¶ 7; Def. Resp. ¶ 7; Dkt. No. 30-7

at 2-3).[8]  An amended Affidavit of Sale with accurate information concerning the Westfield Property was recorded in the Hampden County Registry of Deeds on April 28, 2021 (Dkt. No. 35-3 at 10-12).  Christiana Trust also caused Missell's Post Sale Affidavit Regarding Note to be recorded.  The affidavit certified that Christiana Trust was the assignee of the Westfield Mortgage that was foreclosed and held the Westfield note that was secured by the Westfield Mortgage on the date the Notice of Sale was mailed and published and on the foreclosure date (DASOF ¶ 47; Pl. Resp. ¶ 47; Dkt. No. 35-5 at 13).  Following the foreclosure sale, Plaintiff owed $84,883.33 under the terms of the Westfield Mortgage (DASOF ¶ 49; Pl. Resp. ¶ 49).

On June 1, 2021, representatives of LendingHome, Christiana Trust, and Toorak executed an affidavit under Mass. Gen. Laws ch. 183, § 5B concerning the Westfield property that was substantially similar to the 5B Affidavit for the Springfield property.  The affidavit was recorded in the Hampden County Registry of Deeds on June 14, 2021 (Dkt. No. 35-5 at 25-30).

II.  LEGAL STANDARD

"Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Foregger v. Residential Credit Sols., Inc.,* Civil Action No. 12-11914-FDS, 2013 WL 3208596, at *3 (D. Mass. June 21, 2013) (quoting Fed. R. Civ. P. 56 (a)).  "An issue is genuine for summary judgment purposes when 'a rational factfinder could resolve it in either direction.'"  *Pegasystems Inc. v. Appian Corp.*, Civil Action No. 19-11461-PBS, 2022 WL 4630231, at *5 (D. Mass. Sept. 30, 2022) (quoting *Boudreau v. Lussier*, 901 F.3d 65, 71 (1st Cir. 2018) (cleaned up)).  A fact is material "when it

---

[8] The Notice of Sale that was published in the Westfield News was attached to the Affidavit of Sale (Dkt. No. 30 ¶¶ 9, 10).

has potential of changing a case's outcome." *Doe v. Trs. of Boston Coll.*, 892 F.3d 67, 79 (1st Cir. 2018).  "In general, the moving party may satisfy its initial burden by 'affirmatively produc[ing] evidence that negates an essential element of the non-moving party's claim' or 'point[ing] to evidentiary materials already on file . . . that demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" *Pegasystems Inc.,* 2022 WL 4630231, at *5 (alterations in original) (quoting *Carmona v. Toledo,* 215 F.3d 124, 132 (1st Cir. 2000)). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "This requires production of 'evidence that is significantly probative,' *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 5 (1st Cir. 2010) (cleaned up), and not based upon 'conclusory allegations, improbable inferences, and unsupported speculation,' *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)." *Pegasystems Inc.,* 2022 WL 4630231, at *5.  "With respect to each motion for summary judgment, the court 'view[s] the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor.'" *Id.* (alteration in original) (quoting *Barbour v. Dynamics Research Corp.,* 63 F.3d 32, 36 (1st Cir. 1995)).

III.   ANALYSIS

A.   Plaintiff's Motion for Summary Judgment

1.   <u>Massachusetts Law of Foreclosure</u>

"Where a mortgage grants a mortgage holder the power of sale, as did . . . the [Springfield and Westfield] mortgages, it includes by reference the power of sale set out in G.L. c. 183, § 21, and further regulated by G.L. ch. 244, §§ 11–17C." *U.S. Bank Nat'l Ass'n v. Ibanez,* 941 N.E.2d 40, 49 (Mass. 2011).  According to the statutory scheme,

> after a mortgagor defaults in the performance of the underlying note, the
> mortgage holder may sell the property at a public auction and convey the property
> to the purchaser in fee simple, "and such sale shall forever bar the mortgagor and
> all persons claiming under him from all right and interest in the mortgaged
> premises, whether at law or in equity."

*Id.* (quoting Mass. Gen. Laws ch. 183, § 21).  Due to the "substantial power that the statutory

scheme affords to a mortgage holder to foreclose without immediate judicial oversight,"

Massachusetts law requires that "'one who sells under a power [of sale] must follow strictly its

terms.  If he fails to do so there is no valid execution of the power, and the sale is wholly void.'"

*Id.* at 49–50 (alteration in original) (quoting *Moore v. Dick*, 72 N.E. 967, 968 (Mass. 1905)).

"One of the terms of the power of sale that must be strictly adhered to is the restriction on

who is entitled to foreclose."  *Id.* at 50.  Under Mass. Gen. Laws ch. 183, § 21, "[t]he 'statutory

power of sale' can be exercised by 'the mortgagee or his executors, administrators, successors or

assigns.'"  *Id.* (quoting Mass. Gen. Laws. ch. 183, § 21).  Similarly, under Mass. Gen. Laws ch.

244, § 14,

> "[t]he mortgagee or person having his estate in the land mortgaged, or a person
> authorized by the power of sale, or the attorney duly authorized by a writing
> under seal, or the legal guardian or conservator of such mortgagee or person
> acting in the name of such mortgagee or person" is empowered to exercise the
> statutory power of sale.  Any effort to foreclose by a party lacking "jurisdiction
> and authority" to carry out a foreclosure under these statutes is void.

*Id.* (alteration in original) (quoting Mass. Gen. Laws ch. 244, § 14).  Therefore, "only a present

holder of the mortgage is authorized to foreclose on the mortgaged property[.]"  *Id.*

"A related statutory requirement that must be strictly adhered to in a foreclosure by

power of sale is the notice requirement articulated in G.L. c. 244, § 14."  *Id.*  That section

provides that:

> "no sale under such power shall be effectual to foreclose a mortgage, unless,
> previous to such sale," advance notice of the foreclosure sale has been provided to
> the mortgagor, to other interested parties, and by publication in a newspaper

published in the town where the mortgaged land lies or of general circulation in
that town.

*Id.* (quoting Mass. Gen. Laws ch. 244, § 14). The notice of sale must identify the mortgage

holder. *See id.* "The key, therefore, 'is that the foreclosing entity must hold the mortgage at the

time of the notice and sale in order accurately to identify itself as the present holder in the notice

and in order to have the authority to foreclose under the power of sale . . . .'" *Akar v. Fed. Nat.*

*Mortg. Ass'n*, 843 F. Supp. 2d 154, 167 (D. Mass. 2012) (quoting *Ibanez*, 941 N.E.2d at 53).

"[A] foreclosure carried out by an entity that does not hold the power of sale is void." *Juárez v.*

*Select Portfolio Servicing, Inc.*, 708 F.3d 269, 278 (1st Cir. 2013) (citing *Ibanez*, 941 N.E.2d at

50, 53).

## 2.    Christiana Trust's Right to Foreclose

"Before initiating a foreclosure . . . the mortgagee must hold the mortgage pursuant to a

valid, written assignment and be able to provide proof of such." *Deutsche Bank Nat'l Tr. Co. as*

*Tr. of Ameriquest Mortg. Secs., Inc. Asset Backed Pass Through Certificates, Series 2005-R3 v.*

*Grandberry*, 388 F. Supp. 3d 65, 69 (D. Mass. 2019) (citing *Ibanez*, 941 N.E.2d at 52-53); *see*

Mass. Gen. Laws ch. 244, § 14. Thus, if LendingHome's 2018 blank assignments were valid,

LendingHome no longer held the mortgages when it assigned them to Christiana Trust in 2019

and the assignments to Christiana Trust were void. If, on the other hand, the 2018 blank

assignments were void, then LendingHome's assignments to Christiana Trust were valid. *See*

*Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282, 291 (1st Cir. 2013); *Butler v. Deutsche*

*Bank Tr. Co. Americas*, Civil Action No. 12-10337-DPW, 2012 WL 3518560, at *7 (D. Mass.

Aug. 14, 2012) ("Where a 'grantor has nothing to convey. . . [t]he purported conveyance is a

nullity, notwithstanding the parties' intent.'") (alterations in original) (quoting *Bongaards v.*

*Millen*, 793 N.E.2d 335, 339 (Mass. 2003)); *Midfirst Bank v. Love*, No. 13-P-1071, 2014 WL

942323, at *1 (Mass. App. Ct. Mar. 12, 2014) (unpublished) ("By reason of the prior assignment from MERS to First Horizon, at the time of the assignment from MERS to the plaintiff MERS had no interest in the mortgage to convey.").

Defendants contend that the assignments to Toorak were void because: (1) LendingHome executed the assignments in blank; (2) LendingHome did not intend to deliver and have the assignments to Toorak recorded at the time of execution because the terms of a private funding agreement between LendingHome and Toorak provided that they would be delivered and recorded only if LendingHome defaulted under the terms of the agreement and LendingHome did not default; and (3) the assignments were not supported by consideration (Dkt. No. 35-5 at 44-45 ¶¶ 40-47; 54-55 ¶¶ 5-14).  Because the court concludes that the first and second contentions must be resolved in Defendants' favor, it does not reach the third.

a.      The blank assignments.

"Like a sale of land itself, the assignment of a mortgage is a conveyance of an interest in land that requires a writing signed by the grantor."  *Ibanez,* 941 N.E.2d at 51 (citing Mass. Gen. Laws ch. 183, § 3; *Saint Patrick's Religious Educ. & Charitable Ass'n v. Hale*, 116 N.E. 407, 408 (Mass. 1917)); *see also Linsky v. Exch. Tr. Co.*, 156 N.E. 689, 690 (Mass. 1927) ("An agreement to give or assign a mortgage is an agreement to convey an interest in land and, to be enforceable, must be in writing.") (citing Mass. Gen. Laws ch. 259, § 1(4)).  The Massachusetts Supreme Judicial Court (SJC) stated in *Ibanez* that the Commonwealth's courts have "long held that a conveyance of real property, such as a mortgage, that does not name the assignee conveys nothing and is void; we do not regard an assignment of land in blank as giving legal title in land to the bearer of the assignment."  *Ibanez*, 941 N.E.2d at 53 (citing *Flavin v. Morrissey*, 97 N.E.2d 643, 644 (Mass. 1951); *Macurda v. Fuller*, 114 N.E. 366, 366-67 (Mass. 1916); Mass. Gen.

Laws ch. 183, § 3).  There is no dispute that LendingHome's assignments of the mortgages on the Springfield and Westfield properties that were turned over to Toorak, although they were in writing and executed by representatives of LendingHome before a notary public, were issued in blank, that is, the assignments did not specify the name of the assignee when the assignments were executed before a notary public (Dkt. No. 35-5 at 15-18).

Plaintiff's response to the SJC's statement that an assignment in blank is void is to assert that, in the *Ibanez* decision, the SJC treated as valid an assignment issued in blank by Rose Mortgage, Inc. (Rose) where the blank space in the assignment was at some point stamped with the name of Option One Mortgage Corporation (Option One).  Plaintiff argues that here too, the court should find that LendingHome's blank assignments of the Springfield and Westfield Mortgages, to which the name of Toorak was subsequently added, were valid.  Plaintiff's argument relies on a misreading of the *Ibanez* decision.

In *Ibanez*, Antonio Ibanez obtained a $103,500 loan to buy property in Springfield.  He secured the loan with a mortgage in favor of Rose.  Several days later, Rose executed an assignment of the Ibanez mortgage in blank.  This blank assignment was, at some point, stamped with the name Option One Mortgage Corporation as the assignee and the purported assignment was recorded.  *Id.* at 46.  Among his other bases for challenging the foreclosure on his property, Ibanez challenged the validity of the Rose assignment to Option One on the basis that the assignment was executed in blank.  The SJC explained that "[b]ecause of the failure of [the foreclosing entity] to document any preforeclosure sale assignment or chain of assignments by which it obtained the Ibanez mortgage from Option One, *it [w]as unnecessary [for the SJC] to address the validity of the assignment from Rose Mortgage to Option One.*"  *Id.* at 52 n.19 (emphasis added).  Thus, this court is left with the SJC's unequivocal statement that a mortgage

assignment that does not identify the assignee when it is executed is void and conveys nothing. *Id.* at 53.

To the extent Plaintiff contends that the later addition of Toorak's name to the blank assignments renders the assignments valid, Massachusetts law, while perhaps sparse, does not support that contention, particularly when, as in this case, the undisputed evidence is to the effect that the assignee *and* the assignor agree that the assignments were not intended to be effective when they were executed.  While not binding on this court, the appellate division of the Massachusetts District Court Division, Southern District, discussed the possible effect of the post-execution alteration of an assignment in blank in *Clearvue Opportunity XV, LLC v. Sheehan*, 2015 Mass. App. Div. 125, 2015 WL 5098658 (Aug. 24, 2015).  In that case, the mortgagee challenging a foreclosure argued that one of the assignments in the foreclosing entity's chain of title had been issued in blank and was, therefore, void.  *See id.* at *7.  The court agreed that if the assignment had been executed in blank, then the subsequent addition of an assignee would be "an improperly altered version of blank assignment" and its recording would be "an improper effort to resurrect a void document . . . by altering it after execution."  *Id.*  The court rejected the debtor's argument on the ground that the only evidence the debtor produced at trial to support his allegation was an unauthenticated copy of a blank assignment.  *See id.  Cf. Select Portfolio Servicing, Inc. v. Needel*, No. 14-P-1275, 2015 WL 7357635, at *1 (Mass. App. Ct. Nov. 19, 2015) (unpublished) ("In his decision, the Land Court judge noted that if the assignment [of mortgage] had been executed in blank, as the [plaintiffs] contended it had, it would be 'invalid.'").[9]

---

[9] The history of the *Needel* case is exceptionally complicated and is not relevant to the point for which the case is cited.  Accordingly, the court has not set it out here.

The court finds further support for its conclusion in the case of *In re Kursk*, 409 B.R. 259 (Bankr. D. Mass. 2009), in which the debtor was not identified as a borrower when the mortgage was executed before a notary although she had signed the mortgage on the last page of the document when it was executed in a capacity that was not apparent from the face of the document.  After the fact, the lender caused the debtor's name to be added to the first page of the mortgage, identifying her as a borrower.  *See id.* at 264.  Although there was no dispute that the debtor had signed the mortgage in some capacity on the last page and initialed each page when the mortgage was executed, the *Kursk* court held that "the alteration of the mortgage [to add the debtor's name as borrower] . . . was material and void[ed] the mortgage as to [the debtor's] interest in the property."  *Id.* at 266-67.  The court rested its holding in part on the public policy consideration that documents that constitute titles to real estate, as does an assignment of mortgage, "should not be held hostage to disputes over the parties' intention."  *Id.* at 267 (citing *Burns v. Lynde*, 88 Mass. (6 Allen) 305, 312 (1863) ("[I]t is highly useful that a class of instruments should exist, to which persons may resort with a feeling of confidence that they shall not be binding till they are formally executed and that when thus executed they shall not be liable to be varied or controlled by parol evidence. . . . The convenience which men might occasionally find in leaving blanks in sealed instruments to be filled after delivery, would be but a slight compensation for the evils which would follow the abrogation of the ancient rule of the common law.")).

In summary, as Defendants contend, the assignments executed in blank that LendingHome turned over to Toorak were void and the later addition of Toorak's name to the blank assignments could not make the assignments effective.

      b.     Delivery of the blank assignments

Furthermore, on this record, there is no dispute that LendingHome did not intend to assign its interest in the Springfield and Westfield Mortgages when it turned over the assignments in blank to Toorak.  "To constitute a delivery of an assignment of mortgage to an assignee, it is not enough that the assignment passed into his hands; it must be shown that the assignor delivered it to him with the intention of passing the property in the debt and mortgage to him." *Shurtleff v. Francis,* 118 Mass. 154, 154 (1875).  *See also Frankowich v. Szczuka,* 71 N.E.2d 761, 762 (Mass. 1947) ("The factors essential to delivery [of a deed] are that the grantor intend the deed to effect a present transfer of the property and that the grantee by his conduct assent to the conveyance.").  Here, the affidavits of Missell of LendingHome and Tyde of Toorak show an agreement between the assignee – LendingHome – and the assignor – Toorak – that Toorak was not authorized to fill in its name as the assignee, that Toorak's completions of the assignments were the result of an "inadvertent oversight," and that the assignments "were never intended to be delivered to Toorak and recorded unless and until [LendingHome] defaulted under the terms of the private funding agreement, which did not occur" (Dkt. No. 35-5 at 38-46, 54-57).

Plaintiff's reliance on LendingHome's mortgage servicing notes from January 2020 to June 2021 to show otherwise is unavailing.  Those notes show no more than that LendingHome employees referred to Toorak as an investor and sought Toorak's approval in advance of decisions affecting the value of LendingHome assets (Dkt. No. 41-3 at 3-4, 6, 9, 11-12, 14).  That LendingHome employees sought Toorak's approval for transactions related to LendingHome's assets cannot transform Toorak into a mortgagee in the absence of a valid assignment of the mortgages to Toorak.  The notes describe the assignments in blank as having been "drafted at origination" and refer to Toorak's recording of the assignments as an error (Dkt.

18

No. 41-3 at 19).  Nowhere in the servicing notes does LendingHome refer to Toorak as a mortgagee or state that LendingHome intended to transfer its interest in the Springfield and Westfield mortgages to Toorak at the time of origination.  There is nothing in the record to contradict the representations in the Missell and Tyde affidavits.  Thus, the evidence, even viewed in the light most favorable to the plaintiff, fails to show that LendingHome turned over the blank assignments to Toorak with the intention of passing LendingHome's interest in the mortgages to Toorak at that time.  *See Shurtleff,* 118 Mass. at 154.[10]

        **c.**  The Notices of Sale

Under Massachusetts law, when a foreclosing mortgagee relies on the power of sale in a mortgage, "no sale under such power shall be effectual to foreclose a mortgage unless, previous to such sale, notice of the sale has been published once in each of 3 successive weeks . . . in a newspaper published in the city or town where the land lies . . . ."  Mass. Gen. Laws ch. 244, § 14.  Section 14 of Chapter 244 further provides that

> in the event a mortgagee holds a mortgage pursuant to an assignment, no notice under this section shall be valid unless (i) at the time such notice is mailed, an assignment, or a chain of assignments, evidencing the assignment of the mortgage to the foreclosing mortgagee has been duly recorded in the registry of deeds for the county or district where the land lies and (ii) the recording information for all recorded assignments is referenced in the notice of sale required in this section.

---

[10] Because the court holds that the blank assignments were void and ineffective and did not invalidate the mortgage assignments to Christiana Trust, the court need not reach Plaintiff's contention that Defendants' affidavits recorded pursuant to Mass. Gen. Laws ch. 183, § 5B were ineffective to cure the defects in the chains of title that Plaintiff claims existed when Defendants foreclosed.  It follows from the court's conclusions about the blank assignments that the 5B Affidavits "are limited to facts that explain what actually occurred, and are not inconsistent with the substantive facts contained in the original document[s]."  *Bank of Am. N.A. v. Casey,* 52 N.E.3d 1030, 1039 (Mass. 2016).

*Id.*  It is undisputed that the Defendants' notices of sale did not include the recording information for the assignments Toorak caused to be recorded on November 30, 2020.  Plaintiff contends that Section 14 required that the assignments recorded by Toorak be referenced in the third notices for the sales of the Springfield and Westfield properties and that these claimed violations of Section 14's requirements caused the notices to invalid and the subsequent sales to be ineffectual (Dkt. No. 29 at 15-16).   Again, the court disagrees.

Defendants were not required to include the assignments recorded by Toorak in their notices of sale because those assignments were issued in blank and were void.  It is well-settled that "there is nothing magical in the act of recording an instrument with the registry that invests an otherwise meaningless document with legal effect." *Bevilacqua v. Rodriguez*, 955 N.E.2d 884, 892 (Mass. 2011) (citing *S & H Petroleum Corp. v. Register of Deeds for the Cty. of Bristol*, 707 N.E.2d 843, 845 (Mass. App. Ct. 1999)).  A recorded assignment that is void is not part of the chain of title to property and is, therefore, properly excluded from a statutory notice of sale. *Cf. O'Brien v. Wilmington Tr. Nat'l Assoc.*, 506 F. Supp. 82, 99-100 (D. Mass. 2020) (the court rejected the plaintiff's claim that the omission from a certificate of sale of three void assignments of mortgage that had been recorded invalidated the certificate of sale).

The undisputed facts establish that LendingHome properly assigned the Springfield and Westfield mortgages to Christiana Trust, which therefore had standing to foreclose on the Springfield and Westfield properties.  For the reasons set forth above, Plaintiff's motion for summary judgment is denied.

      II.      Defendants' Summary Judgment Motion

      A.      Slander of Title (Counterclaim Count I)

"Slander of title is a tort action for damage to real property resulting from '"interference with title to real estate by falsehoods which, although not personally defamatory, cause the plaintiff pecuniary loss through interference with . . . dominion over his property."'" *CMI Assocs., LLC v. Reg'l Fin. Co., LLC*, 775 F. Supp. 2d 281, 289 (D. Mass. 2011) (quoting *Salloom v. Lister*, No. 99-1063, 2004 WL 1836027 at \*2 (Mass. Super. Ct. Aug. 10, 2004)).

> In Massachusetts, a person is liable for slander of title, *i.e.,* "injurious falsehood," if he or she (a) publishes a false statement; (b) that harms the interests of another; (c) with the intent to harm the interests of another or "either recognizes or should recognize that it is likely to do so;" and (d) knows that the statement is false "or acts in reckless disregard of its truth or falsity." *Dulgarian v. Stone,* 652 N.E.2d 603, 609 (Mass. 1995) (quoting Restatement (Second) of Torts § 623A).

*Id*.

Defendants argue that Plaintiff is liable for slander of title because it recorded invalid notices of leases for the Springfield and Westfield Properties after Christiana Trust notified Plaintiff that it intended to foreclose and pursue deficiency judgments.  There is no dispute that Plaintiff defaulted under the terms of the Springfield and Westfield Mortgages by failing to make payments on the mortgages and that Christiana Trust scheduled the foreclosure sales of the Springfield and Westfield Properties after Plaintiff failed timely to cure its defaults.  Plaintiff had the Notices of Leases for the Springfield and Westfield Properties recorded in the Hampden County Registry of Deeds, indicating that, on December 1, 2020, Plaintiff had signed six-year leases with options to renew with Cia Recovery Services, LLC (DASOF ¶¶ 16, 41; Pl. Resp. ¶¶ 16, 41).  The leases were facially invalid because they were prohibited by the terms of the mortgages on the properties.

The court assumes for purposes of this decision that Plaintiff recorded the notices to impede Defendants' efforts to sell the Springfield and Westfield Properties.  Nonetheless, title to property is different from a leasehold, which is a possessory interest.  *Cf. Pico Vidal v. Ruiz*

*Alvarado*, 377 B.R. 788, 794 (Bankr. D.P.R. 2007) (noting that the bankruptcy code enumerates the types of property interests that are included in the bankruptcy estate, including a leasehold interest, which is a possessory interest, as distinguished from a title to property, and further noting that property interests are defined by state law).  "A cloud on title 'is the semblance of a title or interest which, although in fact unfounded, nevertheless appears to be valid and casts a doubt on the validity of the record title.'"  *CMI Assocs., LLC*, 775 F. Supp. 2d at 290 (quoting 74 C.J.S. *Quieting Title* § 12).  Defendants have not pointed to any Massachusetts case – or indeed any case from any jurisdiction – holding that a six-year lease, as a possessory interest, may interfere with, or cloud, an established title to property sufficiently to constitute slander of title (Dkt. No 33 at 13-16).  "Parties who remove their cases from state court should not expect to persuade the federal court to make new state law."  *Doe v. Ground Round, Inc.*, No. CIV. 00-76-B-H, 2000 WL 761018, at *1 (D. Me. May 26, 2000) (citing *Jordan v. Hawker Dayton Corp.*, 62 F.3d 29, 32 (1st Cir. 1995); *Freeman v. Package Mach. Co.*, 865 F.2d 1331, 1349 (1st Cir. 1988)).  In particular, "[r]eal property rights are an area of recognized state court expertise," *In re Desmarais*, 33 B.R. 27, 29 (Bankr. D. Me. 1983), in which a federal trial court should tread cautiously.

Moreover, as Plaintiff contends, Defendants have failed to produce sufficient evidence to show that the Notices of Leases were "a 'direct and proximate cause' of [any injuries to Defendants] . . . ."  *CMI Assocs., LLC*, 775 F. Supp. 2d at 291.  Without that showing, Defendants cannot recover damages and are not entitled to summary judgment.  *Id.*  Defendants contend that "the recording of the Notices of Leases was harmful to the Defendants' interests in the [Springfield and Westfield] [p]roperties. . . . Defendants have incurred legal fees and costs associated with investigating the potential impact that the Notices of Leases may have on

Christiana Trust's rights in the . . . [p]roperties and developing strategy with respect to its claim for Slander of Title" (Dkt. No. 44 at 7).  There is no record evidence to support these vague and general assertions.  The Westfield sale occurred on December 22, 2020, eleven days after the notices were recorded, and the Springfield sale occurred about one month later, on January 21, 2021 (DASOF ¶¶ 20, 45; Pl Resp. ¶¶ 20, 45).  It appears undisputed that an impending snowstorm and a potential short sale caused the sales to be postponed from the initial sale date of December 17, 2020.  The Notices of Lease were "at worst, a fly speck on the [Springfield and Westfield] property title[s] that could easily have been resolved by a competent real estate attorney." *CMI Assocs., LLC*, 775 F. Supp. 2d at 291.

For the foregoing reasons, the court denies so much of Defendants' summary judgment motion as seeks judgment on the slander of title claim in Count I of Defendants' counterclaim complaint.[11]

B.      Declaratory Judgment (Counterclaim Counts II & III)

Defendants are entitled to a declaratory judgment that Christiana Trust had standing to foreclose on the Springfield and Westfield Properties and that the foreclosure sales complied with the requirements for exercising the power of sale in the mortgages and the requirements of Massachusetts law.

---

[11] Plaintiff requested in summary fashion that the court dismiss Defendants' counterclaims (Dkt. No. 36 at 2, 16), but Plaintiff limited its cross-motion for summary judgment to seeking judgment in its favor on its claims against Defendants and premised its request for dismissal on its arguments about Christiana Trust's lack of standing to foreclose and Defendants' alleged failure to comply with Massachusetts law governing a lender's exercise of the statutory power of sale (Dkt. No. 28 at 1-2).  While "[a] district court can enter summary judgment even though none of the parties asks for it[,]" *Sanchez v. Triple-S Mgmt. Corp.*, 492 F.3d 1, 7 (1st Cir. 2007), the First Circuit has noted the "potential unfairness lurking in this approach[.]" *Id.*  The court declines to enter judgment on this claim in Plaintiff's favor in the absence of a motion by Plaintiff without hearing further from the parties.

1.   <u>Christiana Trust had standing to foreclose</u>

An entity that holds a mortgage and that holds or acts on behalf of an entity holding the note secured by the mortgage is entitled to foreclose by sale pursuant to a power of sale in a mortgage.  *See Eaton v. Fed. Nat'l Mortg. Ass'n,* 969 N.E.2d 1118, 1121, 1131 n.26 (Mass. 2012); *see also Galvin v. U.S. Bank, N.A.*, 852 F.3d 146, 156 (1st Cir. 2017).  When, as was the case here, the foreclosing party did not originate the mortgage, it must show that it was assigned the mortgage "by a party that itself held the mortgage." *Ibanez*, 941 N.E.2d at 53.  For the reasons set forth above, the mortgage assignments from LendingHome to Christiana Trust were valid.  There is no dispute that Christiana Trust had physical possession of the notes.  *See Sullivan v. Kondaur Capital Corp*., 7 N.E.3d 1113, 1119 (Mass. App. Ct. 2014) (the foreclosing party must "be able to demonstrate either that it holds the underlying note or acts as an authorized agent for the note holder.").  Christiana Trust had standing to carry out the foreclosure sales for the Springfield and Westfield Properties because it held the mortgages and the notes on the dates of the sales.

2.    <u>Notices of Default</u>

"[T]o effectuate a valid foreclosure sale pursuant to a power of sale, the mortgagee must 'first comply[ ] with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale.'"  *Pinti v. Emigrant Mortg. Co.*, 33 N.E.3d 1213, 1218 (Mass. 2015) (second alteration in original) (quoting Mass. Gen. Laws ch. 183, § 21).  Pointing to Paragraph 7 of the promissory notes and Section 4.3 of the mortgages, Plaintiff argues that the foreclosure sales were void because Christiana Trust mailed the notices of default to 47 Harvard Street, Suite 200, Worcester, MA or 47 Harvard Street, Suite 220, Worcester, MA, which were not the correct addresses (Dkt. No. 36 at 5 (# 11), at 10 (# 34)).

24

As to the promissory notes, Paragraph 7 stated that notices should be addressed to Plaintiff at 47 Harvard Street, Worcester, MA (*e.g.,* Dkt. No. 35-1 at 8 ¶ 7).  However, Paragraph 5 of the notes contained Plaintiff's waiver of "all . . . notices and demands in connection with . . . default under and enforcement of [the note]" (*e.g.,* Dkt. No. 35-1 at 8 ¶ 5).  Section 4.3(a) of the mortgages required Christiana Trust to deliver a "written notice of default and election to [sell] . . ." to Plaintiff (*e.g.,* Dkt. No. 35-1 at 31).  Section 6.12 required that all notices and demands by Christiana Trust to Plaintiff be addressed to Plaintiff at the "email address set forth in this Mortgage" – there was none, nor was there delivery by email – or by mail "addressed to Borrower at the address set forth in the Mortgage" (*e.g.*, Dkt. No. 35-1 at 37).  The address set forth in the mortgages was "47 Harvard St., Worcester, MA 01609" (*e.g.*, Dkt. No. 35-1 at 18). Section 6.31.3(c) of each of the mortgages, however, which was separately endorsed by Plaintiff, deleted Section 4.3 in its entirety and replaced it with the following:  "Power of Sale.  Lender shall have the right to cause the Property to be sold under the power of sale contained in this Mortgage in any manner permitted by applicable law" (*e.g.,* Dkt. No. 35-1 at 49).  Because Defendants were not required to comply with the deleted notice provisions in the mortgages to exercise the statutory power of sale and were only required to comply with the applicable provisions of Massachusetts law, any failure to comply with the notice provisions in the mortgages did not invalidate the foreclosure sales.  *Compare Pinti,* 33 N.E.3d at 1221 (the terms of the mortgage required the mortgagee to send a notice of default as a prerequisite to exercising the mortgage's power of sale and "specifically prescribe[d] the contents of the notice of default.").

    3.    <u>Mass. Gen. Laws ch. 244, § 14</u>

The mortgages Plaintiff executed provided that, for the mortgagee (or its assignee) to exercise the power of sale, it needed to comply with the provisions of Massachusetts law, Mass. Gen. Laws ch. 183, § 21 and Mass. Gen. Laws ch. 244, §§ 11-17C, that govern foreclosure sales (*e.g.,* Dkt. No. 35-1 at 48-49, §§ 6.31.2, 6.31.3(c)).  *See, e.g., U.S. Bank Nat'l Ass'n v. Schumacher*, 5 N.E.3d 882, 888 (Mass. 2014).

When Plaintiff did not cure the defaults by the dates specified in the notices of default and elections to sell, Christiana Trust set a sale date of December 17, 2020 (DASOF ¶¶ 12, 36). Christiana Trust complied with Mass. Gen. Laws ch. 244, § 14 by publishing notices of sale in the Springfield Republican (Springfield Property) on November 17, November 24, and December 1, 2020 and in the Westfield News (Westfield Property) on November 18, November 25, and December 2, 2020, stating that the mortgages were assigned to Christiana Trust. Christiana Trust caused the notices of sale to be sent to Plaintiff by registered mail at least 14 days prior to the sale dates (DASOF ¶¶ 13, 14, 37, 38; Dkt. No. 35-1 at 81; Dkt. No. 35-4 at 4; Dkt. No. 35-5 at 48-49 ¶ 7).

Plaintiff claims that Christiana Trust's Notice of Mortgagee's Sale of Real Estate for the Springfield Property did not comply with Mass. Gen. Laws ch. 244, § 14 because it erroneously listed the dates of publication of the notices of sale for the Westfield Property in the notice that it provided to Plaintiff (Dkt. No. 36 # 13; Dkt. No. 40 ¶ 4; Dkt. No. 40-2).  The court disagrees. Section 14 of Chapter 244 requires, as to publication related to foreclosure by power of sale, that:

> no sale under such power shall be effectual to foreclose a mortgage, unless, previous to such sale, notice of the sale has been published once in each of 3 successive weeks, the first publication of which shall be not less than 21 days before the day of sale, in a newspaper published in the city or town where the land lies . . . and notice of the sale has been sent by registered mail to the owner or owners of record of the equity of redemption as of 30 days prior to the date of sale, said notices to be mailed by registered mail at least 14 days prior to the date of sale to said owner or owners . . . to the last address of the owner or owners of

26

the equity of redemption appearing on the records of the holder of the mortgage . .
. .

While Plaintiff asserts that there are disputes as to publication, it does not, in fact, point to any materials in the record calling into dispute the fact that, as to the Springfield Property, Christiana Trust published the required notices of sale in the Republican, a Springfield newspaper, on November 17, November 24, and December 1, 2020 (DASOF ¶ 13; Dkt. No. 35-1 at 81; Dkt. No. 35-5 at 48-49 ¶ 7), the first publication being more than 21 days prior to the January 21, 2021 foreclosure sale of the Springfield Property.  The same is true as to the Westfield Property: the materials in the record raise no genuine dispute as to the fact that Christiana Trust published the required notices of sale in the Westfield News on November 18, November 25, and December 2, 2020, the first publication being more than 21 days before the December 22, 2020 foreclosure sale of the Westfield Property (Dkt. No. 35-4 at 4).  Errors, if any, in the subsequently recorded affidavits of sale, are not evidence of noncompliance with the mandatory publication requirements of Mass. Gen. Laws ch. 244, § 14 and would not invalidate the foreclosure sales.

The provisions of the mortgages specific to Massachusetts provided that the lender could exercise the power of sale in the mortgages in compliance with applicable law, and Mass. Gen. Laws ch. 244, § 14 requires advance notice of a foreclosure sale to the owner or owners of record of the equity of redemption in the properties on which the lender intends to foreclose.  *See* Mass. Gen. Laws ch. 244, § 14.  The undisputed evidence shows that Defendants complied with applicable law and that Plaintiff received notice of the foreclosure sales.  The notices of sale identified the book and page where the mortgages from LendingHome to Plaintiff were recorded in the Hampden County Registry of Deeds, the book and page where the assignments to Christiana Trust were recorded, the date and time of the foreclosure sales, a legal description of

the properties, and the terms of the sales (Dkt. No. 35-2 at 3-4, 25-26, 47-48; Dkt. No. 35-4 at 8-9, 24-25, 40-41). The notices were sent by regular and certified mail to the principal and manager of Southbridge RE, LLC, which was the owner of record, at the address of the Westfield Property; the address of Southbridge RE, LLC's resident agent/resident office on file with the Massachusetts Secretary of State at the relevant time; and the address of Southbridge RE, LLC as stated in the mortgages (Dkt. No. 35-1 at 18; Dkt. No. 35-2 at 23, 45, 67; Dkt. No. 35-3 at 25; Dkt. No. 35-4 at 22, 38, 54; Dkt. No. 35-5 at 58-64; Dkt. No. 39 ¶ 2). *See Burke v. Sun Am., Inc.*, No. CV984842, 2000 WL 1273412, at *6 (Mass. Super. Ct. Apr. 25, 2000) ("it is reasonable to interpret the statute to require the mortgagee . . . to send the prescribed notice to an address that the mortgagee has knowledge is a current address."). Moreover, the affidavit of the Southbridge RE, LLC's principal and manager, Hunter Foote, indicates that he had actual notice of the sale dates (Dkt. No. 39 ¶¶ 5, 6). *See Hull v. Attleboro Sav. Bank,* 596 N.E.2d 358, 362 (Mass. App. Ct. 1992) (The purpose of G.L. c. 244, § 14, was "fully achieved as to the plaintiff because he had actual notice . . . and the bank had proof of it."). Accordingly, the court finds that Defendants complied with the requirements of Mass. Gen. Laws ch. 244, § 14 as to the notices of the sales.

### 4.   The Westfield Property Affidavit of Sale

Plaintiff's contention that Christiana Trust failed to comply with Mass. Gen. Laws ch. 244, § 15, which governs affidavits of sale, ignores the amended affidavit of sale that Christiana Trust recorded after the Westfield Property foreclosure sale (Dkt. No. 36 at 11 # 37). Section 15(b) provides, in pertinent part, that:

> The person selling or the attorney duly authorized by a writing . . . shall, after the sale, cause a copy of the notice and an affidavit fully and particularly stating the person's acts . . . which shall be recorded in the registry of deeds for the county or district in which the land lies . . . . If the affidavit shows that the requirements of

the power of sale and the law have been complied with in all respects, the
affidavit or a certified copy of the record thereof, shall be admitted as evidence
that the power of sale was duly executed.

The affidavit of foreclosure sale is intended "to be recorded with the foreclosure deed and 'secure

the preservation of evidence that the conditions of the power of sale named in the deed have been

complied with.'" *Fed. Nat'l Mortg. Ass'n v. Hendricks,* 977 N.E.2d 552, 558 (Mass. 2012)

(citation omitted).  "[A] deficient affidavit of sale does not void a foreclosure sale or the right to

possession." *Id.* at 555.

It is undisputed that the first affidavit of sale, which Christiana Trust executed on

February 3, 2021 and recorded in the Hampden County Registry of Deeds on March 23, 2021

along with the Westfield foreclosure deed, contained errors (Dkt. No. 35-5 at 4-9).  Rather than

including the required information about the Westfield foreclosure sale, it contained information

about the sale of the Springfield Property (Dkt. No. 35-5 at 7).  An amended affidavit of sale for

the Westfield Property was recorded on April 28, 2021 (Dkt. No. 35-5 at 10-12).  That amended

affidavit substantially tracked the language of Mass. Gen. Laws ch. 244, § 15(b) and Form 12 of

the Appendix to Mass. Gen. Laws ch. 183 by referencing the previously recorded foreclosure

deed that conveyed the Westfield Property to Christiana Trust, incorporating an attached copy of

the notice of sale that appeared in the Westfield News for three successive weeks, certifying

compliance "in all respects" with the notice requirements of Mass. Gen. Laws ch. 244, § 14, and

describing the foreclosure sale of the Westfield Property (Dkt. No. 35-5 at 10).  *See Deutsche

Bank Nat'l Tr. Co. v. Gabriel,* 965 N.E.2d 875, 879 & nn.14 & 15 (Mass. App. Ct. 2012) (Form

12 complies with the requirements of Mass. Gen. Laws ch. 244, § 15(b)).

The statement in the amended affidavit that the notice of sale was published on

November 8, 2020 was a typographical error.  However, a copy of the actual notice of sale that

appeared in the Westfield News with the correct publication dates was appended to the amended

affidavit (Dkt. No. 35-5 at 10, 12), showing publication in compliance with the requirements of

Mass. Gen. Laws ch. 244, § 14.  The typographical error in the amended affidavit of sale was not

material and did not affect the validity of the foreclosure sale.  *See Hammond v. JPMC Specialty

Mortg. LLC*, Civil Action No. 10-11121-DPW, 2011 WL 1463632, at *12 (D. Mass. Apr. 15,

2011) ("Inaccuracies by JPMC in the affidavit of sale and notice of foreclosure filed with the

registry of deeds on March 12, 2009, are not material.  The recorded documents function as

evidence of the sale only, *see* Mass. Gen. Laws ch. 244, § 15 . . . . The remedy for an error in

an affidavit of sale is not invalidation of that sale, but rather a petition to file an amended

affidavit curing the defect."); *Lewis v. Jackson,* 43 N.E. 206, 206 (Mass. 1896) (a grammatical

error in the affidavit of sale was not a material error that affected the meaning of the affidavit).

Accordingly, Defendants are entitled to declaratory judgments that they had standing to

sell the Springfield and Westfield Properties and that the foreclosure sales complied with

Massachusetts law.  So much of Defendants' summary judgment motion as seeks judgment on

Counts II (Springfield Property) and III (Westfield Property) of their counterclaim complaint is

allowed.

C.     Breach of Contract (Counterclaim Count IV) and Deficiency Judgments
       (Counterclaim Count VII)

"In order to state a viable breach of contract claim under Massachusetts law, [Christiana

Trust] must prove that a valid, binding contract existed, the [Plaintiff] breached the terms of the

contract, and [Christiana Trust] sustained damages as a result of the breach." *Brooks v. AIG

SunAmerica Life Assur. Co.*, 480 F.3d 579, 586 (1st Cir. 2007) (citation omitted).  Plaintiff's

opposition to this claim appears to be limited to its assertion that Christiana Trust did not hold

the mortgages at the time of the foreclosure sale.  Plaintiff does not dispute that it executed the

Springfield and Westfield Mortgages that secured the Springfield and Westfield Notes.  Further, there is no dispute that Plaintiff defaulted on its contractual obligations or that Christiana Trust sustained damages in the amounts of the deficiencies in the proceeds of the foreclosure sales. Defendants have shown the elements of the breach of contract claims by undisputed facts and they are entitled to judgment on these claims.  *See Klevisha v. Provident Funding Assocs. L.P.,* 167 F. Supp. 3d 250, 255 (D. Mass. 2016).

As to Defendants' deficiency claims, "[t]he notice mandated by Mass. Gen. L[aws ch.] 244, § 17B 'has been described as "a condition precedent" to a deficiency action, having the practical effect . . . of treating a foreclosure sale as a complete discharge of the mortgage debt, thwarting a postforeclosure deficiency judgment, absent statutory notice of intent to pursue a deficiency.'"  *Id.* at 256 (third alteration in original) (quoting *Framingham Sav. Bank v. Turk*, 664 N.E.2d 472, 474 (Mass. App. Ct. 1996)).  *See also Galvin*, 852 F.3d at 167 (predicting that the SJC would require strict compliance with Mass. Gen. Laws ch. 244, § 17B).

Defendants complied with Mass. Gen. Laws ch. 244, § 17B by causing notices of intent to foreclose to be mailed to Plaintiff not less than 21 days before the date of the foreclosure sales and warning Plaintiff that it was liable for the deficiencies (DASOF ¶¶ 14, 38; Pl. Resp. ¶¶ 14, 38).  On November 20, 2020, Defendants' attorneys executed an affidavit stating that the notices of intent to foreclose and pursue deficiency and the notice of sale for the Westfield Property were mailed to Plaintiff (DASOF ¶ 39; Pl. Resp. ¶ 39).  The foreclosure sale occurred more than twenty-one days later, on December 22, 2020 (DASOF ¶ 48; Pl. Resp. ¶ 48).  A similar affidavit was executed for the Springfield Property on November 23, 2020 (DASOF ¶ 15; Pl. Resp. ¶ 15). The foreclosure sale occurred more than twenty-one days thereafter, on January 21, 2021

(DASOF ¶ 20; Pl. Resp. ¶ 20).  Defendants satisfied the Section 17B prerequisites for seeking deficiency judgments.

"It has become elementary by repeated decisions that a mortgagee attempting to execute a power of sale contained in a mortgage must exercise good faith and reasonable diligence to protect the interests of the mortgagor or of the one holding title to the equity of redemption." *Krassin v. Moskowitz*, 175 N.E. 269, 269 (Mass. 1931); *see also Prop. Acquisition Grp., LLC v. Ivester*, 122 N.E.3d 10, 15-16 (Mass. App. Ct. 2019) (same).  Plaintiff has the burden of proving that Defendants "failed to exercise good faith and reasonable diligence to protect the interests of the mortgagor[]." *Prop. Acquisition Grp., LLC,* 122 N.E.3d at 16 (citing *West Roxbury Coop. Bank v. Bowser*, 87 N.E.2d 113, 115 (Mass. 1949)).  In its opposition to Defendants' summary judgment motion, Plaintiff has not challenged the commercial reasonableness of the foreclosure sales.  Accordingly, the court finds that there is no genuine dispute of material fact that Defendants exercised good faith and reasonable diligence in conducting the foreclosure sales and accepts their deficiency calculations.

As to the Westfield Property, Plaintiff owed principal, interest, taxes, insurance, and advances totaling $316,685.30, an amount reduced by the foreclosure price of $231,801.97, leaving a deficiency of $84,883.33 (DASOF ¶ 49; Pl. Resp. ¶ 49).  As to the Springfield Property, Plaintiff owed principal, interest, taxes, insurance, and advances totaling $266,811.10. While Ruby Realty agreed to purchase the property at foreclosure for $140,900.00, the sale has not closed (DASOF ¶¶ 23-25; Pl. Resp. ¶¶ 23-25).   Defendants nonetheless seek a deficiency judgment based on Ruby Realty's agreement to purchase and Plaintiff has not challenged the deficiency claim on the basis that the sale of the Springfield Property has not closed.  Based on the agreed-upon sale price, Plaintiff owes Christiana Trust $125,911.10 as a deficiency payment

on the Springfield Property.  The combined deficiency amounts total $210,794.43 (Dkt. No. 33 at 17-18).

Defendants seek to recover legal fees and costs associated with this action (Dkt. No. 33 at 17, 18).  The Springfield and Westfield Notes provide broadly that a defaulting borrower will be liable for legal fees and costs, including foreclosure costs and legal fees incurred in defending any claims brought by the borrower arising from the parties' rights and obligations under the loan documents (*e.g.*, Dkt. No. 35-1 at 8).  Aside from Plaintiff's general contentions that Defendants were not entitled to foreclose or failed to do so in compliance with the mortgage terms or state law, it has not argued that Defendants are not entitled to recover legal fees and costs.  When a party does not respond to an argument made against it by the opposing parties on summary judgment, the district court may deem that it has waived the opportunity to do so.  *See Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 260 (1st Cir. 1999) ("The district court is free to disregard arguments that are not adequately developed[.]").  Accordingly, on submission of filings detailing Defendants' requests for fees and costs, to which Plaintiff will be entitled to file an opposition as to amounts claimed and whether the fees and costs are premised on the provisions in the Springfield and Westfield Notes, the court will award Defendants legal fees and costs.

D.    Possession of the Westfield Property (Counterclaim Count VIII)

Finally, Christiana Trust seeks a judgment entitling it to possession of the Westfield property.  "Summary process is a statutory cause of action that enables a person to recover possession of land that is acquired through a mortgage foreclosure sale." *Schumacher,* 5 N.E.3d at 888.  Massachusetts' summary process statute provides, in relevant part, that:

if a mortgage of land has been foreclosed by a sale under a power therein contained or otherwise, . . . and the seller or any person holding under him refuses

to surrender possession thereof to the buyer, . . . the person entitled to the land or
tenements may recover possession thereof under this chapter.

Mass. Gen. Laws ch. 239, § 1.  "'The purpose of summary process is to enable the holder of the

legal title to gain possession of premises wrongfully withheld.'"  *Bank of N. Y. v. KC Bailey*, 951

N.E.2d 331, 335 (Mass. 2011) (quoting *Wayne Inv. Corp. v. Abbott,* 215 N.E.2d 795, 795 (Mass.

1966)).  "'Right to possession must be shown . . . .  Legal title is established in summary process

by proof that the title was acquired strictly according to the power of sale provided in the

mortgage . . . .'"  *Id.* (quoting *Wayne Inv. Corp.,* 215 N.E.2d at 795).  "In a summary process

action for possession after foreclosure by sale, [the foreclosing party] is required to make a prima

facie showing [1] that it obtained a deed to the property at issue and [2] that the deed and

affidavit of sale, showing compliance with statutory foreclosure requirements, were recorded."

*Id.* at 336 (citing *Lewis,* 43 N.E. at 207; Mass. Gen. Laws ch. 244, § 15).  To establish the prima

facie showing, Christiana Trust was required to produce "'an *attested* copy of the recorded

foreclosure deed and affidavit of sale . . . .'"  *Klevisha,* 167 F. Supp. 3d at 258  (quoting

*Hendricks,* 977 N.E.2d at 555) (emphasis added); Mass. Gen Laws ch. 244, § 15(b) ("If the

affidavit [of sale] shows that the requirements of the power of sale and of the statute have in all

respects been complied with, the affidavit or *a certified copy* of the record thereof, shall be

admitted as evidence that the power of sale was duly executed.") (emphasis added).  A certified

or attested copy is one that is "duly certified by the person in charge thereof . . . ."  Mass. Gen.

Laws ch. 233, § 79A.

Christiana Trust has demonstrated compliance with the Massachusetts foreclosure

statutes.  On the other hand, the record does not include the requisite certified copies of the

foreclosure deed and the amended affidavit of sale required for possession in a summary process

action (Dkt. No. 35-5 at 4-6, 10-12).  *See Klevisha,* 167 F. Supp. 3d at 258; Mass. Gen. Laws ch.

244, § 15(b).  *Compare Koufos v. U.S. Bank, N.A.,* Civil Action No. 12-10743-DJC, 2015 WL

5257124, at *5 (D. Mass. Sept. 8, 2015) (defendants were entitled to possession of the property

where they made a prima facie showing by producing certified copies of the

foreclosure deed and affidavit.).  Accordingly, Defendants' motion for summary judgment as to

Count VIII is denied without prejudice.[12]

    IV.    CONCLUSION

    For the foregoing reasons, Plaintiff's cross motion for summary judgment (Dkt. No. 28) is

DENIED.  Defendants' motion for summary judgment (Dkt. No. 32) is GRANTED as to Counts

II, III, IV, and VII in the counterclaim, DENIED as to Count I (Slander of Title) and DENIED

without prejudice as to Count VIII (Possession of the Westfield property).  The Clerk's Office is

directed to schedule a status conference in the near future on a date convenient to the parties and

the court.

    It is so ordered.

Date:  March 29, 2023              /s/ Katherine A. Robertson
                          KATHERINE A. ROBERTSON
                          United States Magistrate Judge

---

[12] Defendants' failure to address their counterclaims for unjust enrichment (Count V) and promissory estoppel (Count VI) constitutes a waiver of those claims.  *See Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 678 (1st Cir. 1995) ("[A]n issue raised in the complaint but ignored at summary judgment may be deemed waived.").